Case number 23-19-08, Jeremy Marchek v. USAA, oral argument, not to exceed 15 minutes per side. Mr. Phillips for the appellant. Thank you, may it please the court. My name is Jacob Phillips. I represent the plaintiff and the appellant in this matter and with the court's permission, I'd like to reserve three minutes of my time for rebuttal. That's fine. This is a pretty simple case and and I'll try to keep the argument here pretty simple. It's a, the case arises from an order granting a motion to dismiss the plaintiff, Mr. Marchek, as a insured by USAA and sustained what USAA determined to be a total loss to his insured vehicle. He submitted a claim at which point USA purported to pay him his vehicle's actual cash value but did not include sales tax or title fees as part of that payment and the plaintiff's claim is that under USA's policy, the actual cash value of his vehicle includes sales tax and title fees. Now, the district court's primary holding in USA's primary argument is that insureds who sustained a total loss aren't entitled to actual cash value at all because it's a limit on liability and not a promise to pay, as the court put it. This gets it wrong for any number of reasons. Under the plaintext of USA's policy, it's wrong under decades and decades and decades of insurance case law. Under the universal understanding in the industry, the actual cash value is what insureds are entitled to in the event of a total loss. In fact, a loss is only a total loss precisely because the insurance company is paying the vehicle value rather than paying to repair the vehicle. So normally, you get into an accident, you submit a claim, the insurance company pays to repair it, right? But there are some situations where it would be either impossible to repair it or it wouldn't make financial sense. If you have a $10,000 vehicle, it's going to cost $20,000 to fix it. Well, then that wouldn't make sense, right? So in that situation, what's called a total loss, meaning that the insured is entitled to actual cash value, not the cost to repair. This is not only the universal insurance sort of understanding, it's also clear under the plaintext of USA's policy. USA defines loss as essentially damage to the safety function or appearance of the vehicle. And then it clarifies that loss includes a total loss, but doesn't include any other cost other than the cost of repair or replace. And then it defines total loss as a situation where the cost of repair plus salvage value exceeds the pre-loss actual cash value of the vehicle. So it's clear under the plaintext of USA's policy that Mr. Barshek was entitled to at least the actual cash value of his vehicle. Obviously, if USA wanted to pay him more, if they wanted to pay him the excess loss, they could have, but he wasn't entitled to that. He was only entitled to the limit of liability, which is the actual cash value of the vehicle. In turn, actual cash value is then defined as the amount it would cost to buy a comparable vehicle. Plaintiff's allegations, which are plausible, are that sales tax is part of the amount to buy. Can we just stop right there? Your brief says repeatedly that you've made a plausible allegation about what this contract term means, and that you don't have to come up with the best reading. You just have to have a plausible reading because we're on a 12b6, but I can't help shaking my head at that. It's a pure question of law. This is a question of contract interpretation. So what facts? I mean, I understand that if we think that the Michigan Supreme Court would find this contract ambiguous, then maybe you'd be able to introduce some facts, but the Michigan Supreme Court doesn't find contracts ambiguous very often. That is correct. Right, so their case law says things like ambiguity is a finding of last resort. A finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting. So it seems to me that, and you have to establish coverage, so it seems to me that you can't just allege something plausible. You have to allege something correct. Yes, Your Honor, so I'd answer that in three ways. First, we may have mixed up plausibility and reasonability. What I meant to say in the brief was the allegations have to be plausible. The interpretation of the contract has to be at least reasonable in order for the plaintiffs to prevail. So I would agree that it's... It must be at least reasonable, but in order to get to any question of fact, right, so in order to not be dismissed on a 12b6, yes, it has to be reasonable, but it has to be more than reasonable. The court would have to find that that the two competing interpretations are in equipoise, and you didn't really argue that. You just keep saying like, well, I've made a reasonable interpretation, and that's good enough. But the Michigan Supreme Court would say use every tool of contract interpretation before we reach ambiguity, which is our last resort. That's correct, Your Honor. Well, I think what the Michigan Supreme Court says is that insurance have to offer a reasonable interpretation, and... Yeah, those are some cases from the 1990s, and you don't practice in Michigan. I know a little bit about Michigan law. Yeah, I just wonder why you think that's the standard. Well, two things. First, we think our interpretation is the only reasonable interpretation of the policy. Okay, so let's talk about that. That seems like something to finish answering the question. Also, though, Judge Redler had an opinion in Perry, which cautioned courts against essentially saying, hey, insured, you win, won the pleadings. And so what I was arguing is that at the pleading stage, it's not the district court didn't have to come out and say, no, USA, you're wrong, and now I'm insuring judgment in favor of the plaintiff. That reasonability carries the day at the motion to dismiss, and it could be re-evaluated at summary judgment after development of record evidence. Now, having said that, I don't think we need that. Yeah, what record evidence would help you establish a question of law? We don't establish questions of law with facts. I would say you can't get to the question of fact unless the contract terms are in equipoise. To the extent that the district court was confused about how total losses work, which it seems like he was, then I could see that helping the court hearing from an expert that's like, hey, this is how it works. You get the total loss, you're entitled to the value of your vehicle, that's how USA does it, that's how every insurance company does it. Now, again, I don't think that's necessary. I think that the opinions and USA's own representations and other tribunals and the overwhelming authority should have been enough that you don't need that development of record evidence, but, you know, try to be generous. Maybe you do, you know, but I'm sorry, Your Honor, were you going to? So the Perry case you mentioned was under Ohio law. Ohio has this, I don't know how unique it is, but has a feature of insurance law where we interpret the contracts in favor of the insured unless it can't be interpreted otherwise or something. I don't know if Michigan has that presumption. I don't remember seeing that from the briefs here. To Judge Larson's point, there are cases that seem to suggest that so long as an interpretation is reasonable, even if it's less reasonable than the insurance company, that the insured still prevails as it would be under Ohio law. Insurance still prevails. Yes, Your Honor. Similar, similar. And those cases are from which decade? I think the latest one was. So let me take that out of the mix for this purpose. So we think you have the better interpretation. I think your interpretation is better than your friends on your side, but I'm not certain. So what do I do in that circumstance? If the insured's interpretation is better. I think it's I think it's better just for the purposes of the hypothetical, but I'm not a hundred percent certain. What do I do? Well, you reverse the district court first. But yes, if the insured's interpretation is the better argument, then the insured's interpretation controls effectively. And so as long as you're saying as long as you have the better argument, you win today and we enter judgment for you? No, because we haven't asked for judgment to be entered. So, I mean, the handwriting would be on the wall as far as what should happen when the court ultimately revisits the issue on remands. The handwriting would be on the wall. You introduced some other evidence that you wanted the district court to consider. We just pointed the court to all of the representations that USA has made to other courts, to the public, to its own insureds. That was a part of the litany of arguments that we made and USA on both points, they've explained to courts why they owe actual cash value in the context of a total loss. And they've explained to courts why sales tax is included in the actual cash value of the vehicle. In fact, in the Betts case that we cited, they said any other interpretation would be anti-textual and unreasonable. So effectively, USA is saying the argument that they're now advancing is anti-textual and unreasonable, whereas the argument that plaintiff is advancing and the one that USA advanced in that case, that's not only reasonable, it's the only reasonable interpretation. Are you putting some kind of a stopple against the insurance agency because of their litigating positions in other cases? No. I forget if we've raised that argument in front of the district court. I'm not pressing it on appeal. I don't think the point of pointing to USA's own representations is just to point out that plaintiff's interpretation cannot be unreasonable if it comports with USA's own interpretation. It comports with decades and decades of case law. It comports with the universal understanding in the insurance industry as to what insurance are. Given all of that, including, yes, USA's own interpretation and points that they've pointed out to other courts and explains why the policy should be interpreted as such, that's another reason why our interpretation can't possibly be unreasonable if it's consistent with USA's, all of these other cases, industry customs and norms, but not as a, and therefore they should not be allowed to argue otherwise under a stopple. But I thought you didn't press an estoppel clip. Right, so not that. We're making this point. We're not trying to say that they should be stopped from argument otherwise. Sorry, I misheard you. So what is your, let's say we agree with you that the policy requires them to pay actual cash value, then the dispute is just what does that term mean? What does actual cash value mean? Does that include taxes and fees or not? So do you have to make an argument that the contract is in equipoise on those two competing interpretations? I mean, what's your argument, best argument, about what that means? The policy specifically defines actual cash value, so there's not an interpretive debate in that sense. It's defined as the amount it would cost to buy a comparable vehicle. So then the question would be, and this is where there's another factual question, as a matter of fact, is sales tax and title fees a part of the cost to buy a comparable vehicle? That's not a question of fact. That's a question of contract interpretation. So the question of law is, do you include the taxes and the fees in the cost to buy? Is the cost to buy just, you know, if I go to the grocery store and I say to the grocer, how much for this loaf of bread? And he says $3.99. It'll cost you $3.99. He means that's the retail price. He doesn't mean, oh, and 6% Michigan sales tax. So you have to concede that it's at least a reasonable construction, and in fact, I think we have an opinion from this court that kind of suggests actual cash value means the market price. So the legal question is, does the cost to buy include taxes and fees? And then, if we said yes, then it'd be, well, what are those taxes and fees? That would be a fact question. I see I've run over time. Can I briefly answer the court's question? Here's how I would answer it. Contract interpretation is absolutely a question of law. I think whether sales tax is included in a replacement cost or in the cost to buy a vehicle, courts have said that's a factual question. It's either true or it's not. Either you have to pay sales tax as a matter of fact, the state imposes sales tax as a factual matter, or it doesn't. But I don't, that's not, you don't look to a contract to see if the state imposes sales tax. You look to the contract to see what the term is. In this case, the amount to cost of a comparable vehicle. Then you go outside the contract to how things operate in the real world and see if sales tax is imposed. Now, and the other cases that we cited, it was resolved at summary judgment because it's, you know, of course, it's not a disputable factual question. Like, the state of Michigan does impose sales tax on vehicles. That's not a, that's not something a reasonable jury could dispute, but it is technically a factual question. And title fees, maybe that, maybe they don't impose title fees in some situations or whatever, but it's still a question of fact that you would go to after looking to see that it's the amount to cost to a comparable vehicle is the definition of the term. That's the legal question. Contract interpretation doesn't include sales tax. You have to look at the state, which isn't, you're not looking at the contract at that point. Now, we would obviously submit that the amount to cost, the amount it would cost to buy a comparable vehicle includes the value of vehicle and includes those transactional costs. And that's the question as well. Now, Wilkerson said that market, that when ACB is defined as market value, that that doesn't include those transactional costs. Wilkerson also said if it had been defined as replacement costs, it probably would. Here, we have the amount to cost to buy a comparable vehicle, a replacement vehicle, which is much closer to what Wilkerson kind of said. Well, yeah, if actual cash value had been defined that way, sure, but it wasn't. It's market value, and market value doesn't include those transactional costs. So we think Wilkerson actually helps us on that point. All right. Do you have any questions? Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Paula Ketchum on behalf of the appellee, USAA. Plaintiffs' counsel talked about what is universally understood in the insurance industry. Plaintiffs and appellants talked about that in their briefing, and again, counsel talked about it today. There is no universal understanding of what is owed under an auto insurance policy. If there's any truth that is universally acknowledged in this context, that truth is that you start with the grant of coverage. You don't start with the limit of liability. You ask, what does the court, or rather, what does the policy agree to cover? So that's exactly what the Seventh Circuit just did a few years ago in a case interpreting this exact policy language against a claim that is identical to the claim in this case, brought by the identical attorneys, asserting the same theory. And there, the Seventh Circuit said, we don't start over here with the limits of liability. When you read an insurance policy, the first question is, what has the insurer agreed to cover? And so that's where I'd like to start today. In the Seventh Circuit case, I thought the court of appeals said that the claimant never incurred any fees or taxes. Well, the reason that the- It really didn't get to that. I thought that was the basis for the holding. No, there were two bases, actually. So there were two things going on in Sigler and Coleman. And that's because in Illinois, Illinois is what we call a reimbursement state. So in Illinois, under Illinois insurance regulations, an insurer is obligated to pay sales tax and fees if an insured incurs them. And so in that case, the insured didn't incur them. So they didn't have to pay them. That's right. That's right. However, the court said its central holding, the central holding in Geico, or excuse me, in Sigler, which is against Geico, and Coleman, which was against USAA, was that on the issue of on the contract interpretation point, putting aside state law, you don't look at the limits of liability first. You look at what the grant of coverage is. OK, that's fine. But that's, it doesn't go, doesn't, so go through that analysis. I just had a hard time reading the contract your way. So we looked at the loss language and the limit of liability to figure out whether they're going to pay ACV or going to pay to repair. Once that's determined, oftentimes it's ACV because the repair costs are so high. And then we look to the definition of actual cash value. And then that language, I would read to probably include. I mean, I'm not sure if I'm only probable, but not sure what I do. So that's a separate question. But I think that language favors your friend on the other side. So respectfully, I disagree. The actual, the insuring obligation is to pay for direct damage to a vehicle. It starts, it's a loss, which is defined in terms of physical damage to a vehicle. OK. We don't get to total loss until we get to the limits of liability section. And there the court says, oh, if, or rather, excuse me, the policy says, if there is a total loss, then we look to ACV, or the limit of liability is ACV. So ACV really doesn't come into the insuring obligation at all. Even total loss isn't really a concept of insuring obligation. It's a separate thing that only really occurs in the context of the limitation of liability section. So if you look at the insuring obligation, the insuring obligation is to pay for physical loss to a car. That has nothing whatsoever to do with sales tax and fees. Certainly the policy is, the insuring obligation says nothing about the payment of sales tax and fees. So it's silent. One could stop there, but what courts frequently do, and need to do in the context of auto insurance, because of course under McCarran-Ferguson, this is always, there are always issues of state law. You look to whether the state, apart from the language of the policy, requires the payment of sales tax and fees. And here, you know. The salvage statute? Well, the salvage statute doesn't require the payment of sales tax and fees. The salvage statute doesn't really apply. It doesn't talk about insurance law. It doesn't really apply to this context. Yes, we have a Michigan statute that talks about in some context it defines ACV, but it doesn't purport to do anything in relation to the context we're talking about here. Well, that definition about the salvage value of vehicles is all in the context of total loss. It's inherently related to total loss. No, it's about a whole different subject matter. If they had like maritime law, some state maritime law or something, and they were defining something a certain way, and they say, well, that's how the state's spoken on it in that area of law, but it's not, I don't think the statement of pronouncement that in every possible dispute of Michigan law, we're going to look to the salvage statute to see how it defines ACV. But we don't even get there, Your Honor. I thought you were getting me there, because you were talking about Michigan state law. Not quite yet. Not quite there yet. A lot of steps in your proceeding. So we don't get there. That's right, because the first step, first step is looking at the policy language, the grant of coverage. We've done that. There's no grant. I know I got you there. But you said we're going to Michigan law. And then the next thing is, is that we look to Michigan law. Is there a requirement? Well, okay. I thought you were going to the statutes. You're not going to the statutes. Not that statute. What I'm saying is, there is zero statute. There are zero statutes or regulations under Michigan law, unlike many other states, like Illinois, like Ohio, like Arkansas, like Nebraska, which require, or Florida, which require the payment of sales tax and fees. It's significant that there is no statutory or regulatory requirement to pay sales tax and fees in Michigan, because, well, but state departments of insurance and legislatures, whether it's in the regs or in the statutes, often do it. What is that, that can't override, I mean, the fact that Ohio chose to do something in Michigan didn't choose to do something wouldn't override the language of a private contract between parties, would it, in Michigan? Well, if there were a requirement under Michigan law that sales tax and fees were owed, it would override, certainly. Right, but there's no requirement. There is no requirement. They can override the other way, too. There's no requirement in the policy. There's no requirement in the statute. I think there might be a requirement in the policy. My point is just returning you to the policy language. I'm not sure what this is. Actually, can I ask a question about this? So, do, if you, there seems to be quite a split among the states about whether the, in a situation like this, sales tax and, taxes and fees are included. Can you tell me, is it the case that in all of the states like Florida, I understand Texas goes the other way, so states like Florida that do require the tax and fees to be included, that all of them are because of a statute? Or a regulation. There, yeah, I mean, so there are states. In other words, the court in all of those cases was interpreting the contract language in light of a statute that we don't have here. That, that is correct. And in the other cases where there is no statute, they've taken the other position? Well, even.  I mean, I just don't know the state of the universe here. Even in states like Illinois. And I'm not sure it matters. If Judge Raegler might be right, we shouldn't be thinking about this, but. Well, even, even in states like Illinois, where, where there is actually a regulation requiring the payment of sales tax and fees on a reimbursement basis, the court still said in interpreting Illinois law, this is the Seventh Circuit and Geico and Sigler, the court still said, well, there's nothing in the insuring obligation that requires the payment of sales tax and fees. Actual cash value can't be an insuring obligation when it's the limit of liability. So that was not based, that, that reading of the contract wasn't based on the Illinois statute. That was, that was a black letter contract interpretation question. Insurance contract interpretation question. So the issue of, the issue of actual cash value and how that's defined doesn't come into play until you get to limit of liability. And there, there are a few reasons why the court shouldn't interpret actual cash value under this policy as including sales tax and fees. That's first of all, and now we get to the only definition that we have under Michigan law. I guess my point was we're talking about a lot of like background points of other states' law and other cases, and it just, I feel like we should be looking at the language of the contract here. But this court has held, this court has held twice in Wilkerson and in the Pazanka case, both in 2021, Wilkerson was American family and Pazanka was progressive. The court looked at the, the term, actual cash value. And what this court said, and I'll quote, is the ordinary insured motorist and ordinary speaker of the English language would not say that the taxes and fees incurred to buy a replacement car are part of the actual cash value of the damaged car. That was, that was the Wilkerson case. Yes, so cost to buy does not include taxes and fees. That's what Wilkerson says. And then we have statutory language here that says, or contract language that says cost to buy. Exactly.  So does, is it your position that Wilkerson just resolves this case? I mean, even if, you know, I understand you have this very complicated thing. Let's say we say, no, they have to pay ACV. But ACV might mean not taxes and fees. Because the ordinary speaker of English would not say that the cost to buy includes taxes and fees. That's a holding of Wilkerson. Even if we disagree, maybe we think that wasn't correct. I don't know. Well, I, of course, agree with the second part of that. I don't agree that there's an, that there's a coverage obligation in the first place. Does it matter to you at all? Well, does it matter? Of course, our view is that the dismissal of the claim should be affirmed. And if the court chooses to affirm on the grounds that ACV doesn't include sales, tax, and fees as a matter of law, of course, we would agree with that. But we don't actually think the court needs to get there because there's no coverage grant in the first place. So, so the Wilkerson case said that ACV referred to the market value. That's right. Which is essentially the cost to buy something. Where, where did that phrase come from? I mean, Ohio law is different if we're going to talk about the difference in states. Ohio law is different. And was, was the contact language there the exact same? Is the contact language here? That was American Families Policy. And their, no, their language actually was, was different. But, but. Doesn't that matter? But, well, it, it doesn't in this context. Because, because, because actual cash value was a term that was used in both the American Family Policy and in the USAA policy. But the way actual cash value was defined was different in the two policies. I'm not certain that that is true. But the way it's defined. I think there was no definition in Wilkerson. Yeah, the, right. And this one is described as the amount that it would cost, the time of the loss, to buy a comparable vehicle. Correct. So that's the language we need to look at. That's correct. That's correct. And it's not the language from Wilkerson. Well, but the, but Wilkerson really was looking at that same, at that same thing. I mean, I, I agree. I don't know, I just would like to talk about, just, I just like the language here. I don't think is that helpful to you. There's other things that you're pointing to that, you know, could be helpful. I just, when I get to the phrase, amount that would cost the time of the loss to buy a comparable vehicle, when I go to the store and the bread's $2.99, the cost, the amount it would cost to buy that bread is not $2.99, it's $2.99 plus tax. And if I take $3 to the store, I don't get to buy the bread. Well, the, those are ancillary costs. I mean, there can be lots of ancillary costs that might be. The amount that it would cost, yeah, I mean, the amount that it would, the amount that it would cost the time of the loss to buy a comparable vehicle. Well, I would submit that, that, that, that interpretation actually is squarely inconsistent with, with, with what this court said in Wilkerson, which is an ordinary understanding. I guess the problem with Wilkerson is it's a, it doesn't have this language. It's an Ohio case. Ohio's ACV's got a whole different meaning under Ohio law. Well, Ohio had, it, there was no ACV meaning under Ohio law. Right. And that, that was the issue in Wilkerson. The Ohio Supreme Court had not defined the question. So, the court started as a matter of first principles. That's right. And you buy from a seller, correct? Pardon me? So, isn't, you buy from a seller. So, when I ask what's the cost to buy, isn't the question what's the, at what price will the seller sell? Absolutely. $2.99. Absolutely. Not $2.99 plus sales tax. That's right. It's a binary, the buy-sell transaction. How much will it cost me to buy it then at the store? It's whatever the store will, will sell it to you for.  That's an ancillary cost. There might be lots of ancillary costs. If I need to go buy a replacement. It's a fair, it's a fair, let me, these are both, I think, plausible, at least, interpretations. So, suppose we, suppose there are two plausible interpretations. What do we do at 12B6? You would still affirm because the actual cash value, again, is not the insuring obligation. The insuring obligation is to pay for physical damage. That's, that's, so it's, it's a separate, So, that's kind of a separate, just because it's very complicated, I have to stop, because it's all very complicated and we're asking very good questions to try to figure that out. That's sort of a separate argument. What we're talking about is the understanding of ACV. Yours is a separate point that we don't even get to this, because of the loss language that you discussed earlier. That's, that's right. That would cut out the consideration of taxes and fees here. Yes, pardon me, I didn't mean to interrupt you. I, the, I would submit that the question of loss is, it's not just separate. It's a threshold question. It's the, it's in terms of order of logical operation. The first question is, is there a grant of coverage in the first place? I suppose I disagree with you on that, and I may have been alone on that, but suppose I disagree with you and I get to this language and I think, boy, there's like, you and Judge Larson have a great point, I have a great point, counsel has a great point, and Judge Davis has a lot of great points. We're just not sure. There's like lots of ways to read this. Then what do we do at 12B6? The, the court, it's a matter of law, and so no amount of pleading or discovery or whatever will get us there. It's a little ambiguous. There's very smart people who can't quite, can't, can't quite agree. Well, the, the, the language is actually defined in the policy, and we disagree that it's ambiguous. The cost of purchase is. I'm just, I'm just, I don't think, I'm just, you don't want to answer that. I, I just, we just, we, we think it is, I think, two of us think it's ambiguous, or maybe three of us. I don't, I don't know. What do we, what do we do? We rule for you because the other side has to be absolutely certain about their reading, or. Really? I would argue that it's, that their, their reading is, is respectfully not plausible. Okay, I think it is. Can you just accept that? I think it is. What do I do? I think yours is plausible, too. You guys, it's great. This is a very well, very well litigated case. Theoretically, if you have two plausible readings of an ambiguous contract, the, the court can still decide the question. It's, it's a, it's a legal question, and this court is looking at that question de novo, and has the, the ability and authority to make that decision. So, just so you pick, there's, so one option would be to pick the best one, and that's it. Another option would be, if there's two plausible ones, we need a remand for any discovery that might help answer. Both are. Well, that would presume the contract is ambiguous. That's right. Should we, maybe we should certify this to the Michigan Supreme Court. Ask them what they think. I just floating that. The, the, of course, what I'm going to go back to is, there's no reason to do that when the court need not send a question to the Michigan Supreme Court that doesn't need to be addressed in order to answer the, this, this question. We don't agree with you on that first point, and we think the only money on the table is what does cost to buy mean? Is that an option? I think it is. The district court based its decision in part, if you look in particular at the order denying plaintiff's motion for reconsideration, looked to the salvage regulation, or statute rather, as indicative of what the Michigan Supreme Court would decide. If this court thinks that's an open question, the Michigan Supreme Court could decide that question. Thank you. Thank you.  May it please the court. I just wanted to clarify, in Wilkerson, since there seemed to be a little bit of confusion on that one, in Wilkerson, the policy did not define ACV at all, so the state looked to Ohio common law and decided that actual cash value meant market value, which the court then held doesn't include sales tax. I would submit that the difference between the value of something and the cost to buy something is the transactional cost, is the sales tax. So you've got the value, but the amount that it would cost you to buy it. And to your point, Judge Larson, if you go to the car dealership and say, hey, what's the car worth, yeah, they'll probably tell you whatever it's listed at, right? Twenty grand. If you pull out your checkbook and said, okay, how much is this going to cost me? They're going to say, well, it's $20,600, or whatever the additional taxes and fees are. And so that's what we would submit, is the critical difference between Wilkerson and this case. It's a tricky question. I don't disagree. And just for the court consideration, there are four courts that have specifically addressed whether the USA's policy language, once they got to actual cash value, okay, now does the amount it would cost to buy a comparable vehicle include sales tax? All four courts said yes. That's McPheeters, Thompson, Bastion, and I'm forgetting one. Betz. Was one of those the Southern District of Ohio? That was the McPheeters case, Your Honor. That's Judge Black in the Southern District just last year. And he actually said it doesn't matter whether you get to ACV or not. Either they owe the amount it would cost to repair or replace, which would include sales tax, or they owe actual cash value. Either way, it's reasonable to interpret either one of those things as including sales tax. Two clarification points. One, you said Wilkerson was about Ohio common law. I mean, maybe it was about dictionaries, right? So he just pulled out the opinion just talks about what an ordinary American would understand these words to mean. And it doesn't, it just cites dictionaries and things. So I'm not sure it's Ohio common law. But what do you, I mean, this is a harebrained idea I just came up with on the bench. I have not consulted with my colleagues about this at all. But what do you think about certification? I think we have the specific policy language here. So typically, if I'm off the top of my head trying to remember the standards under Michigan Supreme Court, I think they generally want it to be of broad applicability. So if it was a type of thing where we had like a Wilkerson situation, which undefined ACV at all, and you wanted to send it to the Michigan Supreme Court to say, okay, we have a contract, doesn't define ACV. What's the state law on what we do, undefined ACV? Here, we have a defined actual cash value. It's USA's unique policy language. And so I don't think that it would be necessary to ask the Michigan Supreme Court just to specifically interpret USA's policy. But of course, if this court disagrees, we're happy to go brief it in front of the Michigan Supreme Court as well. Unless there are any other questions, I will give back six seconds of my time. Thank you, Your Honor. I want to thank both sides for their arguments this morning. I also neglected in our first case this morning, and I doubt counsel is listening, but if they are, in our first case this morning, we had two counsel appointed by the Criminal Justice Act. And I usually thank the CJA attorneys, and I failed to do that. So if they happen to be listening, I'm thanking them now. And we thank you for your arguments. And the clerk may adjourn court.